In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00339-CR
_____

THE STATE OF TEXAS, Appellant

V.

BARBARA KAY HESTER, Appellee

On Appeal from the County Court at Law
Polk County, Texas
Trial Cause No. 2015-0142

**MEMORANDUM OPINION**

The State charged Barbara Kay Hester with driving while intoxicated. The trial court granted Hester's motion to suppress the results of her blood sample. In one appellate issue, the State challenges the trial court's suppression of the blood evidence. We affirm the trial court's suppression order.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). "First, we afford almost total deference to a trial judge's determination of

historical facts." *Id*. Second, we review a trial court's application of the law to the facts *de novo*. *Id*. We sustain the trial court's ruling if it is reasonably supported by the record and is correct on any applicable legal theory. *Id*. at 447-48.

In her motion to suppress, Hester argued that her blood sample was obtained without her consent and without a lawful warrant. At the suppression hearing, Officer Paul Binford testified that he arrested Hester during a traffic stop. He testified that dispatch had received several calls regarding a white Lexus driving all over the road. According to Binford, Hester had dilated pupils, was hesitant and unsure when walking, and demonstrated clues of intoxication during field sobriety tests. Binford testified that he took Hester to the police department, read her *Miranda* warnings, sought consent for a blood sample, which Hester refused, obtained a search warrant, transported Hester to the hospital for the blood draw, and transported Hester to the jail. According to dispatch records, Binford arrested Hester at 7:44 a.m. and arrived at the police department at 7:46. According to Binford, he took a warrant to the municipal judge and then returned to the police department to transport Hester to the hospital for the blood draw. Hester arrived at the hospital for the blood draw at 8:56 and arrived at the jail at 9:40.

Hester testified Binford took her directly to the hospital after her arrest. She did not recall being asked to give a blood sample, taken to the police station, or

read her rights. The warrant indicates that it was signed at 9:36, after the blood draw and only four minutes before Hester arrived at the jail. Binford admitted that no one could obtain a warrant, have blood drawn, and arrive at the jail in only four minutes. He denied taking Hester to the hospital without a warrant.

When suppressing the blood evidence, the trial court found that Hester was taken to the hospital to have her blood drawn before being booked at the county jail and the warrant was obtained only four minutes before Hester arrived at the jail. The trial court found a lack of evidence to suggest that the time on the search warrant was a clerical error, and the trial court concluded that it was impossible for Binford to have obtained the warrant and Hester's blood sample in those four minutes. The trial court determined that Hester's blood was not drawn pursuant to a valid, existing search warrant.

On appeal, the State challenges the trial court's finding that the record failed to show that the 9:36 time on the search warrant was a clerical error. A technical discrepancy in dates or times does not automatically render a search warrant invalid. *Green v. State*, 799 S.W.2d 756, 760 (Tex. Crim. App. 1990). Any discrepancies may be cured through parol evidence, such as explanatory testimony. *Id*. The record in this case contains inconsistencies regarding whether the search warrant was obtained before the blood draw. According to the record, Hester

3

arrived at the hospital around 8:56 and the warrant was signed at 9:36. Hester testified that Binford took her directly to the hospital for the blood draw after her arrest, while Binford testified that he first took Hester to the police station and then to the hospital only after obtaining the warrant. When asked if he had reason to dispute the time on the warrant, Binford stated: "I don't have my paperwork in front of me, ma'am. I mean, I'm looking at the paperwork that you have; if that says 9:36, then that's what it is."

At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and the weight to be given their testimony and may choose to believe all or none of a witness's testimony. *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007). Accordingly, as sole trier of fact, the trial court was entitled to resolve any inconsistencies in the evidence and, in doing so, could reasonably conclude that the record failed to contain sufficient explanatory testimony establishing that the 9:36 time on the warrant was a clerical error. *See id*. We are "not at liberty to disturb any fact finding that is supported by the record." *Id*.; *see Valtierra*, 310 S.W.3d at 447-48; *see also Flores v. State*, 177 S.W.3d 8, 14 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (When a trial court's findings accompany its ruling on a motion to suppress, the appellate court does not engage in its own factual review, but determines only whether those

4

findings are supported by the record.). The trial court acted within its discretion by finding that the evidence failed to establish a clerical error. *See Valtierra*, 310 S.W.3d at 447-48; *see also Flores*, 177 S.W.3d at 14 ("Unless the trial court abused its discretion by making a finding not supported by the record, we will defer to the trial court's fact findings and not disturb the findings on appeal."). We overrule the State's sole issue and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 12, 2015
Opinion Delivered November 18, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.